1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

3

Oct 08, 2020

SEAN F. McAVOY, CLERK

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7

| | |
|---|---|
| UNITED ENERGY WORKERS HEALTHCARE CORPORATION, | NO:  4:19-CV-5283-RMP |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART INDIVIDUAL DEFENDANTS' RULE 12 MOTIONS, DENYING HAVEN'S MOTIONS TO DISMISS, AND GRANTING HAVEN'S MOTION TO STRIKE |
| v. | |
| ATLANTIC HOME HEALTH CARE, LLC, doing business as Haven Home Health, LLC; VALERIE THELANDER, an individual; KRYSTAL VANBUSKIRK, an individual; DANIELLE WOLFE, an individual, | |
| Defendants | |

8

9

10

11

12

13

14

15

16

17        BEFORE THE COURT is Defendants' Motion to Dismiss for failure to state a

18    claim upon which relief may be granted.  ECF Nos. 37, 38.  Individual Defendants

19    move, in the alternative, for a More Definite Statement for Counts I through X and

20    Count XIII.  ECF No. 37.  The Court heard oral argument with Stefan Szpajda and

21    Kevin Kooms appearing on behalf of Plaintiff United Energy Workers Healthcare

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 1

1    Corporation, and Brian G. Davis appearing on behalf of Valerie Thelander, Krystal

2    VanBuskirk, and Danielle Wolfe (collectively, "Individual Defendants"). James M.

3    Barrett appeared on behalf of Defendant Atlantic Home Health Care, LLC, doing

4    business as Haven Home Health, LLC ("Haven"). The Court has reviewed the

5    pleadings and law and is fully informed.

6                                    **BACKGROUND**

7           Plaintiff United Energy Workers Healthcare Corporation ("UEW Healthcare")

8    provides home health services to beneficiaries of the Energy Employees

9    Occupational Illness Compensation Program and the Radiation Exposure

10   Compensation Act. ECF No. 1 at 6. Individual Defendant Thelander is alleged to

11   be a former independent contractor with UEW Healthcare. *Id.* at 7–8. Individual

12   Defendants VanBuskirk and Wolfe are alleged to be former employees of UEW

13   Healthcare. *Id.* at 11–12. Plaintiff alleges that when each Individual Defendant was

14   hired, she signed an employment agreement ("Agreement[s]") including restrictive

15   covenants prohibiting the solicitation of UEW Healthcare patients and the disclosure

16   of confidential information. *Id.* at 8, 13; s*ee also* ECF Nos. 1-6, 1-7, and 1-8.

17   Plaintiff further alleges that VanBuskirk's and Wolfe's Agreements included

18   covenants not to compete. ECF Nos. 1-7 at 17, 1-8 at 4.

19          UEW Healthcare alleges that on or about November 26, 2019, the Individual

20   Defendants began "sharing their plans to end their association and employment with

21   UEW Healthcare, to depart for one of UEW Healthcare's competitors, and to take

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 2

1    UEW Healthcare's patients with them in violation of their respective Agreements

2    and obligations to UEW Healthcare."  ECF No. 1 at 14.  On December 6, 2019, the

3    Individual Defendants allegedly resigned from UEW Healthcare.  *Id*.  As part of her

4    resignation announcement, Defendant Wolfe allegedly made it known that the

5    Individual Defendants' new employer, Haven, offered the Individual Defendants

6    $1,000 for each client that the Individual Defendants brought with them to Haven.

7    *Id.* at 15.

8        On December 7, 2019, UEW Healthcare sent each Individual Defendant a

9    cease and desist letter reminding them of the restrictive covenants to which they

10    previously had agreed.  ECF No. 1-9 at 2–8.  UEW Healthcare also sent Haven a

11    cease and desist letter which advised Haven that the Individual Defendants were

12    subject to "contractual commitments in their agreements" with UEW Healthcare.  *Id.*

13    at 9–10.

14        UEW Healthcare filed a complaint asserting claims under the Defense of

15    Trade Secrets Act ("DTSA") and the Washington Uniform Trade Secrets Act

16    ("WUTSA").  Additionally, UEW Healthcare asserts breach of contract claims,

17    alleging that the Individual Defendants breached the nonsolicitation provisions of

18    their Agreements with UEW Healthcare.  UEW Healthcare further alleges that

19    Defendants VanBuskirk and Wolfe violated the covenants not to compete in their

20    Agreements.  UEW Healthcare claims Haven tortiously interfered with a contract

21    and tortiously interfered with a business relationship or expectancy in violation of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 3

Washington law.  Against all Defendants, UEW Healthcare asserts a claim of civil conspiracy under Washington law.

The Court granted in part UEW Healthcare's Motion for a Temporary Restraining Order, restraining the Individual Defendants from soliciting any of UEW Healthcare's clients or prospective clients with whom the Individual Defendants had responsibilities or duties, possessed confidential information about, or were involved in the development of such client, for the purpose of selling competing services to those offered by UEW Healthcare.  *See* ECF No. 24.  The Court then granted the parties' Stipulated Preliminary Injunction, now in effect, enjoining the Individual Defendants from soliciting UEW Healthcare's clients, prospective clients, employees, and independent contractors.  *See* ECF No. 30.

The Individual Defendants and Haven move to dismiss all counts in the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  ECF Nos. 37, 38.  Alternatively, the Individual Defendants request that the Court order UEW Healthcare to file a more definite statement pursuant to Fed. R. Civ. P. 12(e).  Defendant Haven moves to strike Plaintiff's request for punitive damages pursuant to Fed. R. Civ. P. 12(f).

## LEGAL STANDARD

**Motion to Dismiss**

A plaintiff's claim will be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RULE 12 MOTIONS ~ 4

under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a Rule 12(b)(6) motion to dismiss, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). If the "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency, then the dismissal without leave to amend is proper." *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988) (citation omitted).

**Motion for More Definite Statement**

As an alternative to dismissal, the Individual Defendants move for a more definite statement pursuant to Rule 12(e). ECF No. 37. A Rule 12(e) motion for

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 5

1    more definite statement is appropriate where a pleading "is so vague or ambiguous

2    that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).

3                                           **DISCUSSION**

4          The Individual Defendants move to dismiss Counts I through X of the

5    Complaint, and join Haven's motion to dismiss Count XIII, arguing that UEW

6    Healthcare has failed to plead plausible claims of federal and state trade secret act

7    violations; breaches of contract arising under the three restrictive covenants; and

8    civil conspiracy under Washington law.  ECF No. 1 at 17–32, 34–35; ECF Nos. 37,

9    38.  Defendant Haven moves to dismiss Counts XI through XII, asserting that

10   United Energy Workers failed to plead plausible claims of tortious interference with

11   a contract, tortious interference with a business relationship or expectancy, and civil

12   conspiracy under Washington law.  Defendant Haven also moves the Court to strike

13   Plaintiff's request for punitive damages.  ECF No. 1 at 32–38; ECF No. 38.  The

14   Court will consider each claim in turn.

15   **Federal and State Trade Secret Claims (Counts I & II)**

16         For a claim arising under the Defense of Trade Secrets Act ("DTSA") and

17   Washington Uniform Trade Secrets Act ("WUTSA"), plaintiffs must plead (1) the

18   existence of a protectable trade secret; (2) misappropriation of the secret by

19   defendants; and (3) a nexus between the trade secret and interstate commerce.

20   *DLMC, Inc. v. Flores*, 2018 WL 6682986, at *2 (Dec. 19, 2018 D. Hawai'i) (citing 8

21   U.S.C. § 1836(b)(1)).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 6

1

### 1. UEW Has Adequately Pleaded the Existence of Trade Secrets

2      The Individual Defendants contend that UEW Healthcare failed to identify its

3 alleged trade secrets with sufficient particularity to state a claim under the DTSA

4 and WUTSA.  ECF No. 37 at 4–6.

5      Under both the DTSA and WUTSA, information qualifies as a trade secret if

6 (a) the owner has taken reasonable measures to keep it secret; and (b) the

7 information derives independent economic value from not being generally known to,

8 and not being readily ascertainable through proper means, by another person who

9 can obtain economic value from it.  18 U.S.C. § 1839(3); RCW 19.108.010(4).  A

10 key factor in determining whether information has "independent economic value" is

11 the effort and expense expended on developing the information.  *Ed Nowogroski*

12 *Ins., Inc. v. Rucker et al.*, 971 P.2d 936, 945 (Wash. 1999).  Although a complaint

13 need not spell out the details of the trade secret, a plaintiff must identify the trade

14 secret with "sufficient particularity . . . to permit the defendant to ascertain at least

15 the boundaries within which the secret lies.  *Bombardier Inc. v. Mitsubishi Aircraft*

16 *Corp.*, 383 F.Supp.3d 1169, 1178 (W.D. Wash. 2019).  Customer lists, which are the

17 result of effort and expense on the employer's part, may be protected trade secrets;

18 however, other customer lists, where the information is readily ascertainable, are not

19 protected.  *See Ed Nowogroski Ins., Inc.*, 971 P.2d at 945 (citing *MAI Systems Corp.*

20 *v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993)).

21

1        The Complaint adequately pleads that a potential trade secret existed.  First,

2  UEW Healthcare alleges its trade secrets are password protected and access is

3  limited to a select group of people.  Thus, UEW Healthcare has taken reasonable

4  measures to keep the information secret.  ECF No. 1 at 18.  Second, UEW

5  Healthcare contends its patient list is a trade secret because it is based on unique

6  information and requires substantial money upfront to generate, as well as derives

7  "independent economic value" from not being generally known to the public.  ECF

8  No. 1 at 6–7, 18; *See MP Med. Inc. v. Wegman*, 213 P.3d 931, 939 (Wash. Ct. App.

9  2009) (distinguishing customer list of commonly known sources from one that

10  provided a substantial business advantage).  UEW Healthcare further claims that the

11  following information, used to identify, acquire, or generate patient lists, constitutes

12  "valuable proprietary confidential information and trade secrets": market

13  demographic research; backend parameters for online platforms; web interface

14  information; proprietary empirical trial and error data; business relationships; and,

15  most notably, confidential patient lists.  ECF No. 1 at 7, 18.

16        The alleged trade secrets include the patient lists and the information related

17  to generating those lists.  Furthermore, the Agreements' non-disclosure and

18  confidentiality provisions indicate that UEW Healthcare sought to safeguard specific

19  information, including patient lists.  ECF Nos. 1-6 at 10 (Thelander); 1-7 at 10

20  (VanBuskirk); 1-8 at 2–3 (Wolfe); *See AlterG, Inc. v. Boost Treadmills LLC*, 388

21  F.Supp.3d 1133, 1146 (N.D. Cal. 2019) ("Such allegations may be enhanced if the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 8

confidentiality agreements between the parties detail the protected information that [Employer] imparted to Defendants.").

Whether UEW Healthcare's patient lists and related information are, in fact, a protectable trade secret under the DTSA and WUTSA goes to the merits of the action. For the purposes of this motion to dismiss, in which the Court accepts Plaintiff's allegations in the complaint as true and in the light most favorable to the nonmoving party, the Court finds that UEW Healthcare has adequately alleged the existence of trade secret[s].[1]  *See Manzarek*, 519 F.3d at 1031.

## 2. UEW Has Adequately Pleaded Misappropriation

The Individual Defendants argue that UEW Healthcare's claims under the DTSA and WUTSA fail because the Complaint does not allege which Individual Defendant misappropriated which alleged trade secret. ECF No. 37 at 7.

Misappropriation is the disclosure or use of a trade secret without express or implied consent, by a person who either (1) used improper means to acquire knowledge of the trade secret; or (2) at the time of disclosure or use, knew or had

---

[1] The Court already examined UEW's trade secret allegations in Plaintiff's Motion for a Temporary Restraining Order. ECF No. 24. As previously found by the Court, UEW Healthcare did not demonstrate that the Individual Defendants' knowledge of their own patients' existence and addresses, without more, was a protectable trade secret under the DTSA. *Id.* at 8. For the same reasons, UEW Healthcare did not show a likelihood of success under WUSTA. *Id.* However, taking the facts as alleged in favor of the non-moving party, it is plausible UEW Healthcare's client list qualifies as a "trade secret."

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RULE 12 MOTIONS ~ 9

reason to know, that his or her knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use. *See* 18 U.S.C. § 1839(5); RCW 19.108.010(2).

UEW Healthcare alleges that the Individual Defendants "have used, are using, and inevitably will continue to use UEW Healthcare's trade secrets," knowledge of which was acquired during their employment. ECF No. 1 at 19. All three of the Individual Defendants signed Agreements which sought to protect specific information, including UEW Healthcare's patient lists, so as to give rise to a duty to maintain its secrecy or limit its use. ECF Nos. 1-6 at 10 (Thelander); 1-7 at 10 (VanBuskirk); 1-8 at 2–3 (Wolfe). UEW Healthcare further alleges that the Individual Defendants accessed trade secrets without authorization via UEW Healthcare computer systems using credentials that the Individual Defendants obtained during their employment. ECF No. 1 at 19. Thus, UEW Healthcare plausibly has alleged specific acts by which the Individual Defendants attempted to appropriate information, and thus, survives the motion to dismiss.

Although the Court finds dismissal unwarranted, in order to refine the litigation and give all defendants adequate due process, the Court grants the Individual Defendants' motion for a more definite statement with regard to misappropriation of trade secrets, other than UEW Healthcare's patient lists. UEW Healthcare must clarify which additional purported trade secrets, if any, among those listed in the complaint, that the Individual Defendants are alleged to have

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RULE 12 MOTIONS ~ 10

misappropriated in connection with their resignation and subsequent employment

with Haven.  ECF No. 1 at 7 ("including (1) market demographics research; (2)

backend parameters for social media and other online marketing platforms and

methods not readily ascertainable by the public; (3) web interface information for

websites and platforms; (4) proprietary empirical trial and error data/information

developed through experimentation and fine tuning of patient generation systems;

(5) business, customer, medical care provider and vendor information and

relationships; (6) and other proprietary, confidential  information and trade secrets").

### 3. Interstate Commerce

The Individual Defendants also argue that UEW Healthcare's claim under the

DTSA fails to state a claim because it does not sufficiently plead a nexus between

the misappropriated trade secrets and interstate commerce.  18 U.S.C. § 1836(b)(1)

(alleged misappropriated trade secret must be "related to a product or service used

in, or intended for use in, interstate or foreign commerce").

UEW Healthcare is an Ohio corporation, with its principal place of business in

Wyoming.  ECF No. 1 at 3.  The Individual Defendants allegedly reported to UEW

Healthcare's office in Washington state and received assignments in the "Richland,

Washington area."  *Id.* at 7, 11, 12.  The Court takes judicial notice that Richland,

Washington is approximately 45 miles from the Oregon border.  *See* Fed. R. Evid.

201(b).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 11

1    Construing the facts pleaded broadly in favor of the non-moving party for the

2    purposes of this motion, the patient lists alleged to be trade secrets and

3    misappropriated by the Individual Defendants likely includes patients from one or

4    more states.  This case is distinguishable from *DLMC, Inc. v. Flores*, where DMLC,

5    a Hawai'i based corporation, unsuccessfully relied on its patients' receipt of federal

6    funds to support a nexus with interstate commerce.  2019 WL 309754 *2 (D.

7    Hawai'i January 23, 2019).  Here, Plaintiff alleges that UEW Healthcare is

8    operational in multiple states; thus, it is reasonable to infer that its patient lists would

9    include patients from multiple states.  Therefore, UEW Healthcare sufficiently

10   pleaded a nexus between the alleged misappropriated trade secret[s] and interstate

11   commerce.

12   **Breach of Restrictive Covenants**

13       **1.  Non-Compete (Counts VI & IX)**

14       Defendants VanBuskirk and Wolfe argue that UEW Healthcare's breach of

15   contract claim arising under the non-compete provision in the Agreements fails to

16   state a claim because the covenants are void and unenforceable under newly enacted

17   49.62 RCW.  ECF No. 37 at 10.

18       Under RCW 49.62.020, a noncompetition covenant is void against an

19   employee unless the employee's earnings exceed one hundred thousand dollars per

20   year.  However, RCW 49.62.100 provides that the Chapter only applies to

21   proceedings commenced on or after January 1, 2020, regardless of when the cause of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 12

action arose.  To the extent that the action giving rise to a claim predates January 1, 2020, "*this chapter* applies retroactively, but in *all other respects* it applies prospectively" (emphasis added).  Contrary to the Individual Defendants' interpretation, the plain language of RCW 49.62.100 indicates that the Chapter's application is clearly prospective.

RCW 49.62.080(4) operates to further limit its retroactive application. Whereas the Chapter only applies to suits commenced on or after January 1, 2020, RCW 49.62.08(4) states that "[a] cause of action may not be brought regarding a noncompetition covenant signed prior to January 1, 2020, if the noncompetition covenant is not being enforced."  Reading the two provisions together, even if a party seeking enforcement[2] commences a suit on or after January 1, 2020, but that suit relates to a noncompetition covenant signed prior to the effective date and the covenant is not being enforced, then that party does not have a cause of action.

The present action was filed on December 12, 2019.  *See* ECF No. 1. Accordingly, RCW 49.62.020 is not relevant to the current motion or this case.

Under Washington law, noncompete agreements are enforceable only if they are reasonable.  *Knight, Vale and Gregory v. McDaniel*, 680 P.2d 448, 451 (Wash. Ct. App. 1984).  However, Washington courts will attempt to revise an invalid

---

[2] "Party seeking enforcement" means the named plaintiff or claimant in a proceeding to enforce a noncompetition covenant or the defendant in an action for declaratory relief.  RCW 49.62.010(6).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RULE 12 MOTIONS ~ 13

1    restrictive covenant in order to make it reasonable, rather than reject it altogether.

2    *Emerick v. Cardiac Study Ctr., Inc., P.S.,* 357 P.3d 696, 703 (Wash. Ct. App. 2015).

3    As previously found by this Court, there is a likelihood that the Agreements can be

4    revised so as to be reasonable and enforceable.  ECF No. 24 at 12–13.

5        UEW Healthcare alleges that Defendants VanBuskirk and Wolfe breached the

6    restrictive covenants of their respective Agreements by joining Haven as an

7    employee within the 12-month period following the last day of employment with

8    UEW Healthcare.  ECF No. 1 at 28, 31.  Taking the factual allegations in the

9    complaint as true, UEW Healthcare has alleged sufficient facts to support its breach

10   of contract claims under the non-compete covenants.

11       **2.  Solicitation (Counts III, VII, X)**

12       The Individual Defendants argue that UEW Healthcare's claims for violating

13   the non-solicitation provisions in the Agreement fail to state a claim because the

14   provisions' terms are overly broad, encompassing more than "solicitation," as

15   contemplated by Washington law.  ECF No. 37 at 11–13.  The Individual

16   Defendants argue those terms falling beyond the purview of "solicitation" constitute

17   non-compete covenants subject to Chapter 49.62 RCW.  *Id.* at 12.  However,

18   Chapter 49.62 is inapplicable, as discussed *supra*.  And, as noted above, Washington

19   courts will attempt to revise an invalid restrictive covenant in order to make it

20   reasonable, rather than reject it all together.  *See Emerick*, 357 P.3d at 703.

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 14

1    UEW Healthcare claims the Individual Defendants breached the restrictive

2    covenants of their Agreements by "soliciting or inducing UEW Healthcare patients

3    to switch to Haven." ECF No. 1 at 26, 29, 32. In support of this claim, UEW

4    Healthcare alleges that Haven offered the Individual Defendants a $1,000 bonus for

5    every patient they brought to Haven. ECF No. 1 at 15. Furthermore, at the time the

6    Complaint was filed, six former UEW Healthcare patients allegedly had transferred

7    to Haven. *Id.* Taking the factual allegations in the complaint as true, UEW

8    Healthcare has alleged sufficient facts to support its breach of contract claims under

9    the non-solicitation covenants.

10    ### 3. Confidentiality & Non-disclosure (Counts IV, V, & VIII)

11    The Individual Defendants argue that UEW Healthcare's breach of contract

12    claims arising under the confidentiality and non-disclosure covenants fail to state a

13    claim because the confidential information allegedly being disclosed is not described

14    with sufficient particularity nor does UEW Healthcare differentiate which individual

15    defendant is disclosing what information. ECF No. 37 at 16.

16    UEW Healthcare alleges that the Individual Defendants breached the

17    restrictive covenants by "disclosing or divulging confidential information." ECF

18    No. 1 at 27, 29, 30. Furthermore, UEW Healthcare alleges that each of the

19    Individual Defendants entered into an Agreement containing a "Confidentiality and

20    Nondisclosure" provision, which set forth the type of information related to its

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 15

1  business that UEW Healthcare sought to keep confidential.  ECF Nos. 1-6 at 10

2  (Thelander); 1-7 at 10 (VanBuskirk); 1-8 at 2–3 (Wolfe).

3       Although the Court finds dismissal unwarranted, in order to refine the

4  litigation and give all defendants adequate due process, the Court grants the

5  Individual Defendants' motion for a more definite statement with regard to what

6  information was allegedly "disclosed or divulged," other than UEW Healthcare's

7  confidential patient lists.  UEW Healthcare must clarify what additional types of

8  information, if any, among those listed in the Agreements, that the Individual

9  Defendants are alleged to have "disclosed or divulged" in connection with their

10  resignation and subsequent employment with Haven. *See* ECF Nos. 1-6 at 10; 1-7 at

11  10 (including "(1) pricing or business strategies; (2) compensation or financial

12  information; (3) patient files; (4) charge data; (5) price lists; (6) contract forms and

13  other books, records or files relating to UEW's business, or that of any of its

14  affiliates"); *see also* ECF No. 1-8 at 2–3 (also including "training methods and

15  materials" as confidential information).

**Tortious Interference Claims (Counts XI & XII)**

**1. Tortious Interference with a Contract**

18       Defendant Haven argues that UEW Healthcare's tortious interference claims

19  under Washington law fail to state a claim because the Complaint is devoid of any

20  factual allegations showing Haven knowingly, intentionally, and improperly

21  interfered with UEW Healthcare's contractual and business relationships.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 16

1    Both tortious interference claims require five elements under Washington law:

2    (1) the existence of a valid contractual relationship or business expectancy; (2) that

3    the defendants had knowledge of the same; (3) defendants' intentional interference

4    induced or caused a breach or termination of that relationship or expectancy; (4) the

5    defendants interfered with an improper purpose or used improper means; and (5)

6    resultant damage. *Leingang v. Pierce Cnt'y. Medical Bureau, Inc.*, 930 P.2d 288,

7    300 (Wash. 1997).

8    First, UEW Healthcare must allege the existence of a valid contractual

9    relationship. UEW Healthcare pleads that it was a party to valid contracts with the

10    Individual Defendants. ECF Nos. 1 at 32; 1-6, 1-7, 1-8. Haven challenges the

11    validity of the Agreements' non-solicitation and non-compete restrictive covenants,

12    which is an issue for later litigation. As discussed *supra,* Chapter 49.62 RCW does

13    not govern the Agreements at issue. Thus, UEW Healthcare has sufficiently alleged

14    a valid, contractual relationship between it and the Individual Defendants for the

15    purposes of this motion.

16    Second, UEW Healthcare must allege that Haven had knowledge of the

17    Individual Defendants' contractual relationship with UEW Healthcare. UEW

18    Healthcare alleges that Haven "had knowledge of UEW Healthcare's contracts with

19    Thelander, Wolfe, and VanBuskirk. At all relevant times, Haven was a stranger to

20    these contracts." ECF No. 1 at 32. UEW Healthcare also alleges it "informed

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 17

Haven of [the Individual Defendants'] restrictive covenants" by sending Haven a

cease and desist letter on December 7, 2019.  ECF Nos. 1 at 16–17; 1-9 at 9–10.

The cease and desist letter from UEW Healthcare states:

> We understand that recently associates of our company . . . may have been
> soliciting, persuading or inducing UEW patients to use your company for their
> health care services. Even though [the Individual Defendants] will [no] longer
> be with UEW, they are still required to adhere to all of the contractual
> commitments in their agreements.

ECF No. 1-9 at 9–10.  The cease and desist letter to Haven provides no further detail

with respect to the Individual Defendants' restrictive covenants.  Thus, Haven's

knowledge was limited to the fact that the Individual Defendants had contractual

relationships with UEW Healthcare, and this knowledge was imputed to them on

December 7, 2019.  *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136,

1139 (9th Cir. 2003) (the Court "need not accept as true conclusory allegations that

are contradicted by documents referred to in the complaint.").  Nonetheless, based

on the facts as pleaded, Haven had knowledge of the Individual Defendants'

"contractual commitments."

Third, UEW Healthcare must allege that Haven intentionally interfered and

that interference induced or caused a breach or termination of that relationship.

Interference with a contract is intentional if the actor "desires to bring it about or if

[it] knows that the interference is certain or substantially certain to occur as a result

of [its] action."  *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*,

52 P.3d 30, 34 (Wash. Ct. App. 2002) (quoting Restatement (Second) of Torts §

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 18

766B cmt. d (Am. Law Inst. 1979)).  UEW Healthcare alleges that Haven offered the

Individual Defendants a $1,000 bonus for every patient brought with them to Haven.

As noted above, the facts as pleaded, do not show that Haven had knowledge of the

restrictive covenants at issue.  *See Tabbert v. Howmedica Osteonics Corporation*,

2017 WL 72481 at *4 (E.D. Wash. 2017) (distinguishable in that new employer

allegedly received those documents which outlined employees' legal obligations and

assisted employee in responding to the cease and desist letter sent by former

employer).  However, taking the factual allegations in favor of UEW Healthcare as

the non-moving party, it is plausible that Haven's interference was intentional to the

extent that Haven offered the Individual Defendants a monetary bonus despite

having knowledge of the Individual Defendants' existing "contractual

commitments."  *See id.* at *5 ("Although [old employer] does not completely detail

how [new employer] intentionally interfered with the 1995 Agreement, it is under no

obligation to do so.  The circumstances alleged here collectively make interference

plausible").  Furthermore, it is plausible that this bonus was offered with the

objective that the Individual Defendants be incentivized to terminate or breach those

commitments owed to UEW Healthcare.

UEW Healthcare also must allege that this interference induced or caused the

Individual Defendants to breach or terminate their contractual relationship with

UEW Healthcare.  UEW Healthcare alleges that the Individual Defendants were

induced to breach their contractual obligations and terminate their employment with

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 19

1    UEW Healthcare by the $1,000 per patient bonus.  Finding the alleged bonus to be

2    necessarily incentivizing, the Court finds it plausible that the Individual Defendants

3    were induced by Haven to allegedly breach and terminate their contractual

4    relationship with UEW Healthcare.

5         Fourth, UEW Healthcare must allege that Haven interfered with an improper

6    purpose or used improper means.  "[P]laintiff must prove that the defendant had a

7    duty of non-interference."  *Kieburtz & Assoc., Inc. v. Rehn*, 842 P.2d 985, 989

8    (Wash. Ct. App. 1992).  "Interference is for an improper purpose if it is wrongful by

9    some measure beyond the interference itself, such as a statute, regulation, recognized

10   rule of common law, or an established standard of trade or profession."  *Bombardier

11   Inc.*, 383 F.Supp.3d at 1189 (citing *Newton Ins. Agency & Brokerage, Inc.*, 52 P.3d

12   at 34).  UEW Healthcare alleges it "informed Haven of [the Individual Defendants']

13   restrictive covenants" by sending Haven the cease and desist letter on December 7,

14   2019."  ECF Nos. 1 at 16–17; 1-9 at 9–10.  UEW argues that it has sufficiently

15   alleged improper purpose because Haven interfered with the restrictive covenants

16   which is "per se improper."  *See Newton Ins. Agency & Brokerage, Inc.*, 52 P.3d at

17   34.

18        As noted above, the allegation that Haven was informed of the Individual

19   Defendants' restrictive covenants, so as to make the $1,000 financial incentive "per

20   se improper" is refuted by the contents of the cease and desist letter.  ECF No. 1-9;

21   *see Warren*, 328 F.3d at 1139.  The letter does not describe the restrictive covenants

in detail, but merely refers to "contractual commitments."  Thus, UEW Healthcare has not sufficiently alleged that Haven's interference was for an improper purpose "per se," absent facts showing that Haven had knowledge of the Agreements' restrictive covenants.

However, using a per patient bonus to incentivize the Individual Defendants to not only terminate their employment, but to also encourage their clients to transfer care, suffices to allege an "improper purpose or means" so as to survive dismissal on the pleadings.  *See Tabbert,* 2017 WL 72481 *5 ("The pleaded facts in the [ ] complaint here suggest that MicroPort's alleged interference was intended to have Tabbert actively take away business from Howmedica even though it knew of Tabbert's existing contractual obligations."); *see also Newton Ins. Agency & Brokerage, Inc.*, 52 P.2d at 34 ("Under certain circumstances . . . 'identifiable standards of business ethics or recognized community customs as to acceptable conduct' have developed, such that 'the determination of whether the interference was improper should be made as a matter of law'") (citation omitted).

Finally, UEW Healthcare must allege damages.  UEW Healthcare maintains that because the Individual Defendants terminated their employment, six of UEW Healthcare's patients have transferred to Haven.  ECF No. 1 at 15.  Logically, the loss of patients results in the loss of income.  Thus, it is plausible that UEW Healthcare suffered resulting damage from the alleged tortious interference with a contract.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RULE 12 MOTIONS ~ 21

1      Accordingly, UEW Healthcare has stated a plausible claim against Haven of

2   tortious interference with a contract.

3   **2. Tortious Interference with a Business Relationship or Expectancy**

4      UEW Healthcare also claims Haven tortiously interfered with its business

5   relationships and expectancies between UEW Healthcare and former patients treated

6   by the Individual Defendants.  ECF No. 1 at 33–34.

7      The elements for a claim of tortious interference with a business relationship

8   or expectancy are the same as above, except plaintiff must allege the interference

9   with a valid business relationship or expectancy.  *See Bombardier Inc.,* 383

10   F.Supp.3d at 1188.  UEW must allege the existence of a valid business expectancy

11   and that Haven had knowledge of the same.  A valid business expectancy includes

12   any prospective business relationship that would be of pecuniary value.  *Id.*  Haven

13   does not dispute that UEW Healthcare has a valid business expectancy with respect

14   to its patients, thereby conceding Haven's knowledge of the same.  ECF No. 44 at 7.

15      UEW Healthcare must allege that Haven intentionally interfered and that

16   interference induced or caused a termination of UEW Healthcare's business

17   expectancies.  UEW Healthcare alleges that Haven offered the Individual

18   Defendants a $1,000 bonus for every patient brought with them to Haven and

19   subsequent to the Individual Defendants' departure, at least six UEW Healthcare

20   patients had transferred to Haven.  ECF No. 1 at 15.  The financial incentive was not

21   offered to patients directly.  *Id.*  Thus, the alleged interference with UEW

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 22

1    Healthcare's business expectancy was indirectly achieved by inducing the Individual

2    Defendants to recruit UEW Healthcare patients to transfer to Haven.

3          Based on the facts as pleaded, it is plausible that Haven's objective in offering

4    the Individual Defendants a per patient bonus was to ultimately persuade UEW

5    Healthcare patients to transfer to Haven.  Alternatively, it is plausible that Haven

6    was substantially certain that UEW Healthcare's clients would transfer to Haven as a

7    result of recruiting and offering the Individual Defendants a per patient bonus.

8    Furthermore, it is plausible that UEW Healthcare's former clients were induced to

9    transfer to Haven by the Individual Defendants' departure, or such transfer was

10   caused by the Individual Defendants' departure, as six patients allegedly have done

11   so already.

12          UEW Healthcare also must allege that it interfered with UEW Healthcare's

13   business expectancies for an improper purpose or used improper means.  As noted

14   above, it is plausible that using a per patient bonus constitutes "improper means,"

15   especially in so far as that bonus was created specifically for Individual Defendants

16   and UEW Healthcare's former patients who transferred, as opposed to there being an

17   existing bonus program offered to every employee for any new client brought to

18   Haven.  *See Newton Ins. Agency & Brokerage, Inc.*, 52 P.2d at 34.

19          Finally, UEW Healthcare must allege damages.  At the time UEW Healthcare

20   filed its Complaint, six patients had transferred their care to Haven.  ECF No. 1 at

21   15.  As noted above, the loss of patients logically results in the loss of income.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 23

1   Thus, it is plausible that UEW Healthcare suffered resulting damage from the

2   alleged tortious interference with a business expectancy.

3       Accordingly, UEW Healthcare has stated a plausible claim against Haven for

4   tortious interference with a business expectancy with respect to UEW Healthcare's

5   former patients.

6   **Civil Conspiracy (Count XIII)**

7       UEW Healthcare claims Defendants conspired to (a) interfere with UEW

8   Healthcare's business and contractual relationships with its patients; (b) breach the

9   terms of the Individual Defendants' Agreements; and (c) misappropriate UEW

10  Healthcare's purported trade secrets.  ECF No. 1 at 34–35.

11      To ultimately prevail on a claim for civil conspiracy, a plaintiff "must prove

12  by clear, cogent, and convincing evidence that (1) two or more people combined to

13  accomplish an unlawful purpose, or combined to accomplish a lawful purpose by

14  unlawful means; and (2) the conspirators entered into an agreement to accomplish

15  the conspiracy." *Puget Sound Sec. Patrol v. Bates*, 389 P.3d 709, 715 (Wash. Ct.

16  App. 2017) (quoting *All Star Gas, Inc. v. Bechard*,  998 P.2d 367, 372 (Wash. Ct.

17  App. 2000)).  A claim for civil conspiracy must be predicated on "a cognizable and

18  separate underlying claim."  *Gossen v. JPMorgan Chase Bank*, 819 F.Supp.2d 1162,

19  1171 (W.D. Wash. 2011).

20      UEW Healthcare alleges that Defendants conspired to tortiously interfere with

21  UEW Healthcare's business and contractual relationships with its patients.  ECF No.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 24

1 at 34–35.  Defendants argue that UEW Healthcare's claim cannot be predicated on

tortious interference with a contract or business expectancy.  *See Inteum Co., LLC v.*

*Nat'l Univ. of Sinapore*, 2018 WL 2317606 *2 (W.D. Wash. May 22, 2018).  ("A

party cannot tortiously interfere with its own contract or prospective economic

advantage.") (citation omitted).  To the extent that the Individual Defendants cannot

tortiously interfere with their own contracts, the civil conspiracy claim must rely on

tortious interference with a business expectancy.  The court in *Inteum Co., LLC v.*

*Nat'l Univ. of Sinapore* did not foreclose this as a valid underlying claim; rather the

court dismissed the claim as futile because plaintiff did not allege an underlying

claim against defendant for interference with a prospective economic advantage.

2018 WL 2317606 *2 ("a plaintiff alleging a conspiracy must have a valid

underlying claim that 'would be independently actionable' against one of the

defendants in the suit") (citing 15A C.J.S. Conspiracy § 8).  Here, UEW Healthcare

has alleged an underlying claim of tortious interference with a business expectancy

with respect to its patients.

UEW Healthcare also alleges that Defendants conspired to breach the terms of

the Individual Defendants' Agreements.  ECF No. 1 at 35.  Defendants argue that

UEW Healthcare's claim cannot be predicated on breach of contract.  Although

Washington courts have yet to directly address whether a civil conspiracy claim can

stem from breach of contract, courts generally have limited "unlawful" actions to

torts or statutory violations.  *See Inteum Co., LLC*, 2018 WL 2317606 *3.  The court

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 25

1    in *Inteum Co., LLC* expressly declined to answer whether Washington law allows for

2    a civil conspiracy claim against a party to a contract based on a co-conspirator's

3    inducement to breach.  *See id.*; *see also Douty v. Irwin Mortg. Co.*, 70 F. Supp. 2d

4    626, 631 (E.D. Va. 1999) (a third party is necessary to create an actionable

5    conspiracy to induce a breach of contract).  Here, there is an underlying claim for

6    tortious interference with a business expectancy with respect to UEW Healthcare's

7    patients on which the civil conspiracy claim relies.

8           UEW Healthcare further alleges that Defendants conspired to misappropriate

9    UEW Healthcare's purported trade secrets.  ECF No. 1 at 35.  Defendants argue that

10   UEW Healthcare's conspiracy claim is preempted by Washington's Uniform Trade

11   Secret Act ("WUTSA").  The Court agrees.  The WUTSA "displaces conflicting

12   tort, restitutionary, and other [Washington] law pertaining to civil liability for

13   misappropriation of a trade secret." Wash. Rev. Code 19.108.900(1).  *See T-Mobile*

14   *USA, Inc. v. Huawei Device USA, Inc.*, 115 F.Supp.3d 1184, 1197 (W.D. Wash.

15   2015) (applying the "strong view of preemption" under which "a plaintiff may not

16   rely on acts that constitute trade secret misappropriation to support [another cause]

17   of action") (quoting *Ed Nowogroski Ins.*, 944 P.2d at 1097 (Wash. Ct. App. 1994)).

18          Although Washington courts have not addressed the preemptive scope of the

19   DTSA, other courts in the Ninth Circuit have found that the DTSA does not provide

20   for a stand-alone private action for a conspiracy to misappropriate trade secrets.  *See*

21   *Genentech, Inc. v. JHL Biotech,  Inc.,* 2019 WL 1045911 *12 (N.D. Cal. 2019)

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 26

(granting defendants' motions to dismiss claim regarding conspiracy to

misappropriate under California UTSA and DTSA) (citing *Steves & Sons v. JELD-*

*WEN, Inc.*, 271 F. Supp. 3d 835, 843 (E.D. Va. 2017) (rejecting proposition that

Section 1832(a)(5), which criminalizes conspiracy to violate the DTSA, provides for

a private right of action)).

Since the Court has found that there is a valid predicate claim of tortious

interference with a business expectancy to support UEW Healthcare's civil

conspiracy claim, the Court turns to the adequacy of the allegations with respect to

civil conspiracy.  UEW Healthcare must allege two or more people combined to

accomplish an unlawful purpose, and the conspirators entered into an agreement to

accomplish the conspiracy.  UEW has alleged that Haven offered the Individual

Defendants $1,000 for every patient brought to Haven.  ECF No. 1 at 15.  It is

plausible that this bonus and the Individual Defendants' acceptance of that bonus

formed the basis of an agreement between the Defendants to actively take away

patients from UEW Healthcare and transfer those patients' care to Haven.

Accordingly, UEW Healthcare has stated a plausible claim against Defendants

for conspiring to tortiously interference with UEW Healthcare's business expectancy

with respect to UEW Healthcare's former patients.

**Motion to Strike Punitive Damages**

Defendant Haven moves to strike UEW's request for punitive damages.  Fed.

R. Civ. P. 12(f) provides that the "court may strike from a pleading an insufficient

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 27

defense or any redundant, immaterial, impertinent, or scandalous matter."

"Washington law prohibits punitive damages awards absent express statutory

authorization." *National City Bank*, 2010 WL 2854247, at *7 (E.D. Wash. 2010)

(citing *McKee v. AT&T Corp.*, 164 Wash.2d 372, 401, 191 P.3d 845, 860 (2008)).

There is no statute authorizing punitive damages for UEW Healthcare's common

law claims.  Although the DTSA and WUTSA allows for punitive damages, UEW

Healthcare has not asserted a DTSA and WUTSA claim against Haven.

Accordingly, the Court grants Haven's motion to strike UEW Healthcare's request

for punitive damages against Haven.

Accordingly, **IT IS HEREBY ORDERED**:

1. The Individual Defendants' Rule 12 Motions, **ECF No. 37**, is **GRANTED
   IN PART** and **DENIED IN PART**.

   a. The Individual Defendants' **Motion for a More Definite Statement**
      with respect to Plaintiff's state and federal trade secrets claims
      (Counts I and II) is **GRANTED**.  Plaintiff shall file a First Amended
      Complaint within **30 days of the date of this Order**.

   b. The Individual Defendants' **Motion to Dismiss** Plaintiff's claims for
      breach of the covenant not to compete (Counts VI and IX) is
      **DENIED**.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12 MOTIONS ~ 28

c.  The Individual Defendants' **Motion to Dismiss** Plaintiff's claims for breach of the covenant not to solicit (Counts III, VII, and X) is **DENIED**.

d.  The Individual Defendants' **Motion for More Definite Statement** with respect to Plaintiff's claims for breach of the confidentiality and nondisclosure covenants (Counts IV, V, and VIII) is **GRANTED**.  Plaintiff shall file any First Amended Complaint within **30 days of the date of this Order**.

2.  Defendant Haven's Motion to Dismiss and Motion to Strike, **ECF No. 38**, is **GRANTED IN PART AND DENIED IN PART**.

a.  Defendant's Motion to Dismiss Count XI is **DENIED**.

b.  Defendant's Motion to Dismiss Count XII is **DENIED.**

c.  Defendants' Motion to Dismiss Count XIII is **DENIED .**

d.  Defendant's Motion to Strike UEW Healthcare's demand for punitive damages against Haven is **GRANTED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** October 8, 2020.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RULE 12 MOTIONS ~ 29